IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| TAMARA "MISTI" EAKER § | | PLAINTIFF |
| § | | |
| § | | |
| v.  § | | Civil No. 1:20cv92-HSO-JCG |
| § | | |
| § | | |
| CITY OF MOSS POINT, § | | DEFENDANTS |
| MISSISSIPPI; MARIO KING; § | | |
| and JOHN DOES 1-5 § | | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS CITY OF MOSS POINT, MISSISSIPPI, AND MARIO KING'S MOTION [70] TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

BEFORE THE COURT is Defendants City of Moss Point, Mississippi, and Mario King's Motion [70] to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for Summary Judgment. After review of the Motion, the record, and relevant legal authority, the Court finds that Defendants' Motion [70] to Dismiss for failure to state a claim should be granted.

I. BACKGROUND

A.   Procedural history

On July 2, 2019, twelve individuals who were employees or residents of the City of Moss Point, Mississippi (the "City"), initiated an action in this Court against the City and Mayor of Moss Point Mario King ("King"), collectively "Defendants." Compl. [1]; *see also* Case No. 1:19-cv-364 Compl. [1]. Plaintiffs collectively advanced seven claims, including First Amendment, Second Amendment, Title VII, age

1

discrimination, taxpayer, and state-law claims. *See id.* On September 17, 2019, Plaintiffs filed an Amended Complaint [18] adding an additional plaintiff, and Defendants filed a Motion for Severance [20], arguing that the Court should sever the claims of each Plaintiff into individual actions. Mot. [20]. The Court granted Defendants' Motion [20] on March 2, 2020, and Plaintiffs' claims were severed into twelve separate cases, in addition to the original parent case. Order [67]. The Court ordered each Plaintiff to file an amended complaint in their individual case "set[ting] forth factual allegations and claims specific to him or her." *Id.* at 22. Plaintiff Tamara "Misti" Eaker ("Plaintiff" or "Eaker") filed her Amended Complaint [68] in this case on May 1, 2020, advancing three causes of action: (1) violations of the Second and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983 against both the City and King; (2) First Amendment violations pursuant to 42 U.S.C. § 1983 against both the City and King; (3) and a "taxpayer/citizen" cause of action against King individually. Am. Compl. [68] at 5-6, 11.

Count One alleges that King "has forbidden non-police personnel from carrying a firearm at City Hall," including both citizens and employees of the City, but that despite this ban, King himself carries a firearm at City Hall. Am. Compl. [68] at 5. This firearm ban "is not intended to serve any legitimate government interest[]" and is instead intended to serve as "a form of intimidation of employees and others." *Id.* The Amended Complaint alleges that the firearm ban "is an infringement of the Plaintiff's and other persons' Second Amendment Right." *Id.*

In Count Two, Plaintiff advances a claim for First Amendment violations against both the City and King. *Id.* at 6. Specifically, she claims that she "sought documents and information regarding misconduct by the mayor and misuse of city funds and resources," and "has also made complaints about the mayor's conduct and raised issues with the City's refusal to provide official budget reports and other documents." *Id.* As a result of her requests, King "has openly addressed [Plaintiff] and slandered [her] during board meetings," and, as a result of her husband's efforts to "st[and] up" for her, King has made "a blatant attempt to intimidate and silence" her. *Id.* at 6-7. The Amended Complaint details an incident in which Plaintiff drove by King's home, noticed a City-owned vehicle in the driveway, and proceeded to take a photograph of the "blatant violation of the law." *Id.* at 7. Despite knowing "from the beginning who [Plaintiff] was," King allegedly "began posting to social media that an 'unknown stalker' was harassing him" and "made threats to [Plaintiff] stating, 'do not enter my personal space without expecting personal consequences.'" *Id.*  Plaintiff further asserts that she and her husband "have a right of association protected by the Constitution," and that King's "efforts to retaliate against" Plaintiff's husband "are retaliatory and intended to chill the free speech of [Plaintiff] and others." *Id.* at 6-7.

The Amended Complaint [68] further asserts that King has "utilized social media in an attempt to provoke [Plaintiff's husband] into a confrontation so that [he] can be terminated[,] . . . [i]n an effort to retaliate against [him] for his wife's vocal criticism." *Id.* at 7-8. Plaintiff lists 21 different incidents she contends were

3

"undertaken by the mayor to harass the Eakers," *id.* at 8, and posits that she "has engaged in a protected activity by requesting documents and protesting the mayor's actions," *id.* at 11. Plaintiff asserts that King's actions "have caused the Eakers to suffer damages and these actions have been intended to chill a person of ordinary firmness from continuing to challenge the mayor." *Id.*

Lastly, Count Three of the Amended Complaint [68] advances a cause of action "on behalf of taxpayers for Moss Point and invite[s] any other citizens to join suit against the Defendant [sic] for the recovery of tax amounts and resources misspent and misappropriated by Mario King and members of his administration." *Id.* Plaintiff claims that King has misappropriated taxpayer funds and resources, including using City-owned vehicles for personal use, taking taxpayer-funded trips for personal gain, and requiring City employees to work on private events while being compensated by the City. *Id.* at 11-12.

B.  Defendants' Motion [70] to Dismiss

Defendants have filed the present Motion [70] to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), first asserting that the Amended Complaint [68] should be dismissed because Plaintiff failed to comply with the Court's Order [67] requiring each Plaintiff to "set forth factual allegations and claims specific to him or her." Mem. [71] at 3 (citing Order [67] at 22; Fed. R. Civ. P. 41(b)). Defendants contend that Plaintiff has "wholly failed to set forth factual allegations and claims specific to herself," as eleven of the twelve factual allegations in the Amended Complaint are identical to nine of the other Plaintiffs' complaints, and all

4

allegations in Counts One, Two, and Three are identical to those of her husband, David Eaker's, Amended Complaint. *Id.* Because "Plaintiff has fallen well short of complying with this Court's Order," Defendants take the position that Plaintiff's claims should be dismissed under Federal Rule of Civil Procedure 41(b). *Id.*

Defendants next argue that Plaintiff's claims pursuant to 42 U.S.C. § 1983 against Mario King in his official capacity should be dismissed because they "are redundant of the action against the City of Moss Point[.]" *Id.* at 4-6 (citing *inter alia Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005)).

With respect to Plaintiffs' Second Amendment claims, Defendants contend that these should be dismissed because the activity Plaintiff has alleged to be restricted, namely the carrying of a firearm inside City Hall, "is simply not protected by the Second Amendment." *Id.* at 7. Defendants point to the United States Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which held that while a ban on handgun possession in the home violated the Second Amendment, "nothing in [the] opinion should be taken to cast doubt on . . . laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." *Id.* at 6 (quoting *Heller*, 554 U.S. at 626).

Defendants argue that Plaintiff's First Amendment claims should likewise be dismissed because she has made "no allegation that Defendants took any action that had the effect of inhibiting her speech." *Id.* at 8. Because Plaintiff's "only connection to this lawsuit is through her husband" and because she "is not and was

not an employee of the City, . . . she has suffered no retaliatory injury in response to her free speech . . . ." *Id.*

With respect to Plaintiff's allegations regarding her attempt to obtain public records from the City as the source of a First Amendment violation, Defendants contend that Plaintiff failed to exhaust her administrative remedies under the Mississippi Public Records Act, which requires any person denied the right to inspect public records to file a complaint with the Mississippi Ethics Commission and to file an appeal, if necessary, to the chancery court. *Id.* (citing Miss. Code Ann. § 25–61–13). Defendants further maintain that Plaintiff "has failed to demonstrate an intent to convey a particular message" in requesting the public records in question, such that her actions are not protected by the First Amendment. *Id.* at 10.

Regarding Plaintiff's claim that she and her husband have a "right of association" and that King's actions are "retaliatory and intended to chill" her free speech, Defendants point out that Plaintiff raises a First Amendment violation "wholly different" from her husband's and thus they are not associated. *Id.* at 9. Defendants assert that Plaintiff has not engaged in a constitutionally protected activity and has failed to sufficiently plead a First Amendment retaliation or associational claim. *Id.* at 11.

Lastly, Defendants contend that Plaintiff lacks standing to bring a taxpayer cause of action against King because she "has not established that . . . King's alleged misappropriation of taxpayer funds and resources has adversely affected her differently than the general taxpayers of Moss Point." *Id.* at 12. Defendants point

6

out in their Reply [75] that Plaintiff lacks taxpayer standing because she has not brought her claim as a federal taxpayer, but rather as a local taxpayer, and such claims are not recognized as federal in character under current Supreme Court precedent. Reply [75] at 7 (citing *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 479 (1982)).

Plaintiff responds that while "[m]any of the facts surrounding [her] and the multiple Plaintiffs who have sued these Defendants overlap[,]" she has "provide[d] specific details about her protected activities and [the] mayor's retaliatory actions." Resp. [74] at 2. With respect to her Second Amendment claims, Plaintiff contends that King's ban on firearms in City Hall, which he purportedly does not follow himself, violates the Equal Protection Clause independent of any Second Amendment violation. *Id.* She asserts that Defendants bear the burden of proving that the restriction on her Second Amendment right is justified, and that Defendants' argument that restrictions on the carrying of firearms in government buildings are presumptively valid "does not meet the criteria under the Second Amendment." *Id.* at 3-4.

With respect to her First Amendment claims, Plaintiff maintains that "[t]he threat of firing and harassing [her] husband is certainly meant to chill [her] free speech rights." *Id.* at 4. She contends that requesting public records from the City is a constitutionally protected activity, and that King's alleged attacks and harassment, including "false and defamatory statements on social media . . ., which are intended to defame [her] and potentially incite violence against her, . . . would

7

certainly deter others from engaging in free speech." *Id.* at 5. Plaintiff further asserts that she has standing to bring a taxpayer suit "for the recovery of monies unlawfully expended" and that she does not have to show that she was "affected differently from other taxpayers in order to have standing." *Id.* at 7-8. Plaintiff does "not object to the dismissal of the redundant claims brought against the mayor in his 'official capacity.'" *Id.* at 2.

## II. DISCUSSION

A. Legal standard

When presented with a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face . . . ." *Spitzberg v. Houston Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he court may not look beyond the pleadings in ruling on the motion," *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996), and must accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff, *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (citation omitted). A complaint does not need detailed factual allegations, but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations must raise a right to relief above the speculative level. *See id.* Further, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable,

and 'that a recovery is very remote and unlikely.'" *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds)).

Section 1983 of Title 42 of the United States Code provides for a claim against anyone who "under color of any statute, ordinance, regulation, custom, or usage, of any State" violates another's federal constitutional rights. 42 U.S.C. § 1983; *see also Monroe v. Pape*, 365 U.S. 167, 173-74 (1961) (describing the legislative purpose of § 1983); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450 (5th Cir. 1994). To prevail on a § 1983 claim, a plaintiff must establish two elements: (1) a constitutional violation; and (2) that the defendant was acting under color of state law when committing the constitutional violation. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).

B.  Analysis

1.  Second and Fourteenth Amendment Claims

   a.  Second Amendment claim

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The United States Supreme Court addressed the scope of the right guaranteed by the Second Amendment in *District of Columbia v. Heller*, 554 U.S. 570 (2008) (*Heller I*). *Heller I* "held that the Second Amendment codified a pre-existing individual right to keep and bear arms," *Hollis v. Lynch*, 827 F.3d 436, 443-44 (5th Cir. 2016) (citing *Heller I*, 554 U.S. at 592), but also recognized that such a right is "not unlimited,"

9

*Heller I*, 554 U.S. at 626. The Supreme Court "gave a non-exhaustive list of 'longstanding prohibitions on the possession of firearms' that are 'presumptively lawful' and pass muster under *Heller*." *Hollis*, 827 F.3d at 444 (quoting *Heller I*, 554 U.S. at 626). In particular, the Court clarified that

> nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Heller I*, 554 U.S. at 626-27 & n.26.

The United States Court of Appeals for the Fifth Circuit has articulated a two-step inquiry for analyzing laws that impact the Second Amendment. "[T]he first step is to determine whether the challenged law impinges upon a right protected by the Second Amendment; [and] . . . the second step is to determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the appropriate level of scrutiny." *Nat'l Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 194 (5th Cir. 2012) (citing *Heller v. District of Columbia*, 670 F.3d 1244, 1252 (D.C. Cir. 2011) (*Heller II*)).

On remand, the United States Court of Appeals for the District of Columbia Circuit in *Heller II* elaborated on the first step of the inquiry, holding that "[a] plaintiff may rebut th[e] presumption" that a firearm restriction is presumptively lawful under *Heller I* "by showing that the regulation [has] more than a de minimis

10

effect upon" the plaintiff's claimed Second Amendment right. *Heller II*, 670 F.3d at 1253.

Here, Plaintiff claims that King's restriction on the carrying of firearms in City Hall violates her right guaranteed by the Second Amendment. However, *Heller I* specifically exempted prohibitions on carrying of firearms in "sensitive" places, including inside government buildings, *see Heller I*, 554 U.S. at 626-27 & n.26, and the Fifth Circuit has applied that exemption to property owned by the federal government. In *United States v. Dorosan*, the Fifth Circuit upheld the conviction of a defendant for violating a federal regulation prohibiting the possession of a firearm on property owned by the United States Postal Service. 350 F. App'x 874, 876 (5th Cir. 2009). The court stated that because the parking lot was "a place of regular government business" utilized by the Postal Service, it qualified as a "sensitive place" under *Heller I* and thus permitted restrictions on the possession of firearms. *Id.* at 875; *see also, e.g.*, *United States v. Class*, 930 F.3d 460, 464 (D.C. Cir. 2019) (holding that the Second Amendment did not give the defendant the right to possess a firearm in a parking lot owned by the federal government because the lot was "sufficiently integrated with the [United States] Capitol [building]" to qualify as a "sensitive place" under *Heller I*); *Georgiacarry.org, Inc. v. U.S. Army Corps of Engineers*, 212 F. Supp. 3d 1348, 1360 (N.D. Ga. 2016) (holding that a regulation restricting gun use on property administered by the Army Corps of Engineers did not burden a pre-existing right under the Second Amendment).

The parties have not briefed whether King's restriction was adopted as an official City ordinance or some other law. However, assuming at this stage that King's restriction carried the force of law, a similar rationale applies here. King has not restricted the possession of firearms in the home, as was the case in *Heller I*, but has rather instituted a restriction in a government building, a location that falls within the examples of "sensitive" places mentioned in *Heller I* where firearm restrictions are permissible. 554 U.S. at 626-27 & n.26. King has not attempted to regulate conduct that falls within the constitutional ambit of the Second Amendment within the meaning of *Heller I*. The restriction, therefore, did not violate Plaintiff's Second Amendment rights under the first step of the Fifth Circuit's two-step inquiry. *See NRA*, 700 F.3d at 194; *Dorosan*, 350 F. App'x at 875. Plaintiff has also failed to demonstrate that the restriction had more than a de minimis effect upon her claimed Second Amendment right, *Heller II*, 670 F.3d at 1253, as Plaintiff presumably remained free to exercise her rights under the Second Amendment elsewhere in the City or on other City property, *NRA*, 700 F.3d at 876. For these reasons, Plaintiff's Second Amendment claim should be dismissed.

  b.  Fourteenth Amendment equal protection claim

Plaintiff also contends that King's restriction violates the Equal Protection Clause of the Fourteenth Amendment because he does not comply with it himself. It is not clear upon what theory of an Equal Protection violation Plaintiff relies, but under either a straightforward Equal Protection Clause analysis, or under a theory of selective enforcement, Plaintiff's claim fails.

"The equal protection clause essentially requires that all persons similarly situated be treated alike." *Mahone v. Addicks Util. Dist.of Harris Cnty.*, 836 F.2d 921, 932 (5th Cir. 1988). However, the Clause "does not forbid classifications." *Harris v. Hahn*, 827 F.3d 359, 365 (5th Cir. 2016) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)). Where a government actor enacts a classification "that disadvantage[s] a 'suspect class,' or . . . impinge[s] upon the exercise of a 'fundamental right,'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982), a reviewing court will apply strict scrutiny. In cases where neither a suspect class nor a fundamental right is implicated, the appropriate standard of review is rational basis, which inquires "whether the difference in treatment between [classes] rationally furthers a legitimate state interest." *Harris*, 827 F.3d at 365 (quoting *Nordlinger*, 505 U.S. at 11). Classifications considered under rational basis review are given "broad deference" and will survive "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). The party challenging the classification bears the burden of demonstrating that the classification lacks a rational basis. *Id.*

The classification at issue here is between King and all other non-police personnel who wish to carry a firearm in City Hall. This classification does not implicate a suspect class of individuals, such as racial minorities or women. *See Sonnier v. Quarterman*, 476 F.3d 349, 368 n.17 (5th Cir. 2007) ("A suspect class, as used in an equal protection analysis, is one saddled with such disabilities, or subjected to a history of purposeful unequal treatment, or relegated to such a

13

position of political powerlessness as to command extraordinary protection from the majoritarian political process."). Nor does this classification violate a right under the Second Amendment, as the Court has previously discussed. Thus, rational basis review applies, and Plaintiff has not demonstrated that there is no rational basis underlying the classification between King and other non-police personnel. Rather, she has made the conclusory statement that King's personal exemption from the restriction has violated her Equal Protection rights. This is not sufficient to carry Plaintiff's burden.

Where a plaintiff makes a claim of selective enforcement of a regulation as violating the Equal Protection Clause, "[t]he conscious exercise of selectivity in enforcement is not in itself a federal constitutional violation." *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999). A plaintiff must prove "that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000). The selective enforcement must have been "deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Allred's Produce*, 178 F.3d at 748. While the Fifth Circuit has "stated that personal vindictiveness might be an improper motive" for selective enforcement, it has "never specifically addressed" whether such a motive would be sufficient to support an Equal Protection claim. *Beeler v. Rounsavall*, 328 F.3d 813, 817-18 (5th Cir. 2003). Because the Equal Protection Clause prohibits "only disparate treatment based upon group or class factors," the

Fifth Circuit has indicated that "personal vindictiveness by itself is insufficient as an improper motive in the absence of some other class- or group-based discrimination." *Id.* at 818.

Here, Plaintiff has not articulated a motive for King's personal exemption from the firearm restriction in either her Amended Complaint [68] or in her Response [74], much less a motive of racial or religious discrimination. The thrust of the factual allegations in the Amended Complaint suggests that King is allegedly motivated by a personal vendetta against Plaintiff and her husband. Am. Compl. [68] at 2-4. In the absence of any class- or group-based discriminatory animus, such a motive is insufficient to support an equal protection violation. Because Plaintiff cannot satisfy the first element of § 1983 claim by showing a constitutional violation, her Second Amendment and associated equal protection claims should be dismissed.

2. First and Fourteenth Amendment Claims

"The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation for the exercise of that right." *Warner v. St. Bernard Par. Sch. Bd.*, 99 F. Supp. 2d 748, 750 (E.D. La. 2000) (citing *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968)). Not every action in response to an individual's exercise of her First Amendment rights rises to the level of an actionable harm. *See Colson v. Grohman*, 174 F.3d 498, 510 (5th Cir. 1999).

It is undisputed that Plaintiff was not an employee of the City. To state a claim for First Amendment retaliation that does not involve "an employment or

15

other contractual relationship between the plaintiff[] and . . . government officials," a plaintiff must show that: (1) she was engaged in constitutionally protected activity; (2) the defendants' actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendants' adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *See Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). A retaliation claim "requires some showing that the plaintiff['s] exercise of free speech has been curtailed." *Id.* at 259. Even where some retaliatory conduct has the effect of chilling a plaintiff's speech, such actions can be "too trivial or minor to be actionable as a violation of the First Amendment." *Id.* at 258.

Plaintiff alleges that King's actions taken against her were intended to chill her speech, highlighting in her Response [74] that her request for budget and accounting records for the City prompted King's "attacks" and "harassment" against Plaintiff and her husband. Resp. [74] at 5. Specifically, Plaintiff states that because she requested records from the City, King has "limit[ed] her ability to visit her husband at the firehouse" and has "harassed [her husband] in general." *Id.* She claims that King has "made false and defamatory statements" on his official mayoral social media accounts "intended to defame [Plaintiff] and potentially incite violence against" her. *Id.* However, she does not identify any specific statements or threats to support her assertions.

Plaintiff has not directed the Court to any state or federal statute or regulation upon which she was relying in order to seek access to City budget

16

records, but Mississippi law provides "any person [with] the right to inspect, copy," or reproduce any public record "of a public body in accordance with reasonable written procedure adopted by the public body[.]" Miss. Code Ann. § 25–61–5. "[A]ccess to public records pursuant to state or local law is not a right guaranteed by federal law." *Norwood v. City of Hammond*, No. Civ.A.02-0220, 2003 WL 1090253, at *2 (E.D. La. Mar. 11, 2003) (citing *Houchins v. KOED, Inc.*, 438 U.S. 1, 15 (1978)). The right Plaintiff was attempting to exercise by requesting budget records from the City may very well be guaranteed by state law, but based upon what Plaintiff has submitted, it was not protected by federal law under § 1983 under these circumstances. Plaintiff has not demonstrated that she can satisfy the first element of a First Amendment retaliation claim, that by seeking access to these records she was engaging in a constitutionally protected activity.

Even if Plaintiff could show that her requests were a constitutionally protected activity, King's actions do not rise to the level of an injury that would chill a person of ordinary firmness from continuing to engage in such activity. The Fifth Circuit has held that "[m]ere allegations of verbal abuse do not present actionable claims under § 1983." *Bender v. Brumley*, 1 F.3d 271, 274 n.4 (5th Cir. 1993); *see also Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859-60 (5th Cir. 2020) (per curiam) (holding that a plaintiff's First Amendment retaliation claim based upon threatening Facebook comments failed because "mere threatening language and gestures of a custodial office" do not establish § 1983 liability) (citing *Bender*, 1 F.3d at 274 n.4; *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)). Plaintiff alleges

17

that King has acted in a myriad of ways amounting to verbal abuse or intimidation. While such actions may be unprofessional or inappropriate, they do not rise to the level of an actionable constitutional injury under § 1983. Plaintiff has not stated a claim for violation of her First Amendment rights.

3. Taxpayer/Citizen Claim

Plaintiff in her capacity as a taxpayer of the City of Moss Point advances a claim against King for allegedly misappropriating municipal funds. To establish taxpayer standing a plaintiff must:

> (1) "allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution;" and (2) "show the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8."

*Purcell v. Feinberg*, 58 F. App'x 597, 597 (5th Cir. 2003) (quoting *Flast v. Cohen*, 392 U.S. 83, 102-03 (1968)). Where a plaintiff does not raise an Establishment Clause violation as the basis for her suit, taxpayer standing requires that the plaintiff assert a "direct injury." *Henderson v. Stalder*, 287 F.3d 374, 381 n.7 (5th Cir. 2002).

Here, Plaintiff has not shown that she has a suffered any direct injury as a taxpayer as a result of King's actions. She has only alleged that she and other municipal taxpayers have been "harmed" by his use of taxpayer funds. Am. Compl. [68] at 12. A general and conclusory allegation of "harm" is not sufficient to plead a direct injury. *See ASARCO Inc. v. Kadish*, 490 U.S. 605, 613-14 (1989) (holding that

18

plaintiffs failed to make a showing of direct injury where they asserted only "adverse economic impact" of a state law on them as taxpayers).

Moreover, Plaintiff is challenging the use of municipal tax funds by a local elected official, not a federal congressional expenditure. This is not the type of action contemplated by *Flast* or subsequent case law addressing the issue of taxpayer standing. *Flast*, 392 U.S. at 102-03; *see also Valley Forge Christina College v. Americans United for Separation of Church and State*, 454 U.S. 464, 486-87 (1982). While Plaintiff's taxpayer claims of misappropriation of funds may be appropriate for adjudication in state court, they do not state a claim for the violation of any federal law and they should be dismissed to that extent. To the extent Plaintiff may have adequately pleaded a state-law-taxpayer claim, because there is not complete diversity of citizenship between the parties, this Court lacks original jurisdiction to entertain any such claim, and it declines to exercise supplemental jurisdiction over such a claim. 28 U.S.C. § 1367.

### III.  CONCLUSION

To the extent the Court has not specifically addressed the parties' remaining arguments, it has considered them and determined that they would not alter the result.[1]

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants City of Moss Point, Mississippi, and Mario King's Motion [70] to Dismiss is

---

[1] Because the Court is granting Defendants' Motion [70] on the merits, it need not address Defendants' arguments under Federal Rule of Civil Procedure 41(b).

19

**GRANTED**, and Plaintiff's claims against Defendants City of Moss Point, Mississippi and Mayor of Moss Point Mario King are **DISMISSED**.

**SO ORDERED AND ADJUDGED**, this the 26th day of February, 2021.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE